IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AAMCO TRANSMISSIONS, LLC,     *

Plaintiff,     *

v.     *     Civil Action No. 22-3212-PJM

UP TO PARR, LLC, *et al.*,     *

Defendants.

\*\*\*

## MEMORANDUM OPINION

Following the Court's entry of a default judgment against Defendants Carlos Parr and Up to Parr, LLC ("UTP"), Plaintiff AAMCO Transmissions, LLC ("AAMCO") filed a Motion for Attorney's Fees (ECF No. 25) with supporting documentation (ECF No. 27). Neither Parr nor UTP have filed an opposition to AAMCO's Motion. For the reasons explained below, the Court **GRANTS** AAMCO's Motion but reduces the award of fees to $25,000.

**I.**

AAMCO franchises AAMCO-brand transmission and repair total car care centers across the United States and Canada. *See* Complaint, ECF No. 1 ¶ 1. AAMCO owns and holds federally registered trademarks for the marks "AAMCO" and "AAMCO Transmission Total Care." *See id.* ¶ 16-17.[1] As part of its business model, AAMCO grants franchises "to qualified persons to own and operate franchised AAMCO centers under written franchise agreements with AAMCO, together with a limited license to use certain AAMCO-branded trademarks in connection with their businesses." *Id.* ¶ 14. Before aspiring franchisees may use AAMCO's marks, they must first apply

---

[1] The marks are registered on the Principal Register of the United States Patent and Trademark Office under Registration Numbers 85,209 and 3,875,638, respectively. *Id.* ¶ 16.

1

to become franchisees and complete the company's franchisee training program, during which they are educated about AAMCO's trade secrets, sales methods, and other proprietary information. *See id.* ¶ 26, 30-31. They must also execute a franchise agreement. *See id.* ¶ 26.

Carlos Parr was one such aspiring franchisee. *Id.* ¶ 24-25. Following the termination of a prior franchise agreement for an AAMCO-franchised center at 15197 Marlboro Pike, Upper Marlboro, Maryland ("the Upper Marlboro Center"), AAMCO identified and approached Parr as a possible replacement franchisee for that Center. *See id.* ¶ 21-24. Upon sale of the assets associated with the Upper Marlboro Center, AAMCO indicated it would reinstate the former franchisee's agreement and transfer the former franchisee's rights to Parr and his company, UTP. *See id.* ¶ 25. The former franchisee's agreement provided that any successor must submit an application for a franchise, attend AACMO's training, and execute a franchise agreement. *See id.* ¶ 26.

In May 2021, Parr submitted a franchisee application, and later that year completed the required training following two weeks of online classes and one week of field training in Virginia Beach, Virginia. *See id.* ¶ 27-29. But upon completion of the training program, Parr refused to sign a franchise agreement. *Id.* ¶ 32. He and his company nonetheless acquired the Upper Marlboro Center's assets and began operating the Center under the name Up-to-Parr Transmissions, Engines & Complete Auto Care. *Id.* ¶ 35.

AAMCO recently learned that Parr and his company had been operating the Upper Marlboro Center using AAMCO marks, sales methods, and other proprietary information. *See id.* ¶ 37. This included answering the phone by identifying the Center as "AAMCO," issuing receipts to customers that bore the AAMCO marks and identifying the Center as "Up to Parr AAMCO," and displaying signage with the AAMCO marks inside and outside the Center. *Id.* ¶ 38-42. AAMCO sent a cease-and-desist letter to Parr and UTP, but they continued to display at least some of the AAMCO marks. *Id.* ¶ 44.

2

On December 13, 2022, AAMCO filed its complaint in this Court, alleging that Parr and UTP had engaged in trademark infringement (Count I) and unfair competition (Count II), in violation of the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a), and that they had been unjustly enriched (Count III) by their infringing conduct. *See id.* ¶ 50-61. In its complaint, AAMCO sought, among other things, compensatory damages and a permanent injunction enjoining Parr and UTP from using AAMCO's marks or otherwise engaging in infringing conduct. *See id.* at 10-11.

Neither Parr nor UTP answered AAMCO's complaint (in fact, no attorney entered an appearance on behalf of either Defendant), so the Court granted AAMCO's motion for default judgment on June 8, 2023. ECF No. 24. In its default judgment order, the Court granted AAMCO's request for a permanent injunction and awarded $91,230.30 in treble damages plus interest. *See id.*

## II.

The Court may award "reasonable attorney fees" to prevailing parties under the Lanham Act in "exceptional cases." 15 U.S.C. § 1117(a). As the Fourth Circuit explained in *Georgia-Pacific Consumer Products LP v. Von Drehle Corp*, 781 F.3d 710 (4th Cir. 2015), a case is "exceptional," and a district court may award fees, where the court determines, under the totality of the circumstances, that (1) there is an "unusual discrepancy on the merits" of the parties' respective positions; (2) the non-prevailing party litigated the case "in an unreasonable manner"; and (3) there is otherwise a need "to advance considerations of compensation and deterrence." *Id.* at 721. The party seeking fees must establish that the case is "exceptional" by the preponderance of the evidence. *See Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 484-85 (4th Cir. 2018). The determination whether a case is "exceptional" falls within the discretion of the trial court. *See id.*

Even in exceptional cases, any award of fees must be "reasonable." 15 U.S.C. § 1117(a). The Fourth Circuit uses a three-step method for determining the reasonableness of attorney fees. *See McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). As the *McAfee* court explained:

3

First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).

*McAfee*, 738 F.3d at 88 (internal quotation marks and citation omitted). These factors include:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fee awards in similar cases.

*Corral v. Montgomery Cnty.*, 91 F. Supp. 3d 702, 712-13 (D. Md. 2015).[2] Once the court determines the lodestar figure, it must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and finally, the court awards a percentage on the remaining amount, "depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88.

### III.

AAMCO argues that this case, resolved by default judgment, is exceptional under the Lanham Act because "defendants' disregard of this litigation" presents a wide discrepancy on the merits of the parties' respective positions, is an unreasonable manner of litigating, and is "the type of conduct" that courts should "seek to deter by means of awarding" fees under the Act. *See* ECF No. 27 at 3-5 (citing *Living Legends Awards for Serv. to Humanity, Inc. v. Human Symphony Found., Inc.*, No. PX 16-3094, 2017 U.S. Dist. LEXIS 143006, at *7 (D. Md. Sept. 5, 2017)). The Court agrees.

---

[2] In *Purdue v. Kenny A.*, 559 U.S. 542, 551-52 (2010), the Supreme Court "appeared to question" the administrability of the *Johnson* method to assessing fees when compared to the lodestar method, but as judges in this District have recognized, *Purdue* did not cast doubt on "the idea of using relevant *Johnson* factors in helping to come to a reasonable fee." *Corral v. Montgomery Cty.*, 91 F. Supp. 3d 702, 713 n.4 (D. Md. 2015) (quoting *Spencer v. Cent. Servs., LLC*, No. CCB-10-3469, 2012 U.S. Dist. LEXIS 4927, at *5-6 (D. Md. Jan. 13, 2012)).

The Court finds Parr's and UTP's conduct—both prior to and during this litigation—to be extraordinary and condemnable. After representing to AAMCO that he intended to assume the assets and operations of the Upper Marlboro Center in accordance with the former franchisee's agreement, Parr applied to be an AAMCO franchisee and attended the company's required training. There he learned AAMCO's trade secrets and proprietary sales and operations methods. Contrary to the terms of the former franchisee's agreement that he purportedly sought to assume, he then refused to sign a franchise agreement. Parr and UTP thereafter operated the Upper Marlboro Center (using AAMCO's proprietary sales and operations methods) under the pretense of being affiliated with AAMCO, going so far as to identify the Center as Up to Parr AAMCO in communications with customers and displaying AAMCO's registered marks within and outside the Center. Parr and UTP also failed to remove all AAMCO marks from the Center after receipt of AAMCO's cease-and-desist letter. When AAMCO brought this suit to enforce its rights under the Lanham Act, Parr and UTP simply ignored it.

Given these circumstances, the Court concludes that this is an exceptional case under the Lanham Act. By exploiting AAMCO's confidence in order to educate themselves, then ignoring AAMCO's claims altogether, Parr and UTP have litigated in an unreasonable manner. Their lack of a stated position almost *ipso facto* suggests a wide and unjustifiable discrepancy between the parties' respective positions on the merits. Further, because Parr and UTP have failed to litigate—or even have an attorney enter an appearance on their behalf—the Court finds that "there is a particular need to deter [Parr and UTP] in light of [their] disregard for this litigation," in addition to the need to compensate AAMCO for their infringement. *Living Legends Awards for Serv. to Humanity*, 2017 U.S. Dist. LEXIS 143006, at *7 (quoting *Hilton Worldwide, Inc. v. Global Advert., Inc.*, No. 1:15-cv-1001, 2016 U.S. Dist. LEXIS 189528, at *9 (E.D. Va. Apr. 8, 2016)); *see El Pollo*

*Rico, LLC v. Wings & Pollo, LLC,* No. PWG 21-cv-2346, 2022 U.S. Dist. LEXIS 132472, at *7 (D. Md. July 25, 2022) (similar). AAMCO is entitled to reasonable attorney's fees.

## IV.

Having determined that AAMCO is entitled to attorney's fees, the Court must decide what fees are reasonable. *See* 15 U.S.C. 1117(a); *McAfee*, 738 F.3d at 88. AAMCO requests a total fee of $41,410.08 to offset bills from attorneys of the law firms Cheng Cohen LLC ("Cheng Cohen") and Plave Koch PLC ("Plave Koch") who have represented AAMCO in this action. ECF No. 27 at 5. In its supporting documentation, AAMCO states that $4,145 of this total is attributable to case development, background investigation, and case administration, during which Cheng Cohen billed for 12.8 hours of work and Plave Koch, AAMCO's local counsel, billed for .4 hours of work. *Id.*; ECF No. 27-2. AAMCO requests an additional $10,925 for 30.3 hours billed by Cheng Cohen and 1.6 hours billed by Plave Koch to draft and file AAMCO's complaint. ECF No. 27; ECF No. 27-3. AAMCO also requests $22,737.50 for motions practice, for which Cheng Cohen and Plave Koch attorneys billed 65.8 hours and .9 hours, respectively. ECF No. 27; ECF No. 27-9. Finally, AAMCO seeks to recover additional expenses incurred by counsel in connection with computerized research ($1,076.72), hiring a private investigator to confirm Parr and UTP's infringing conduct ($1,879.05), and service of the summons and complaint on Parr and UTP ($646.81). ECF No. 27; ECF No. 27-5 to -7. The Cheng Cohen attorneys represent that they have reduced their standard hourly rates, along with the hourly rates of supporting paralegals, to fall within the parameters of the Court's Local Rule 109.2 and the guidelines of the Rule's Appendix B. *See* ECF No. 27-1. The Plave Koch attorneys represent that their standard hourly rates already fall within the guidelines and so remain unchanged. *See* ECF No. 27-8.

The Court finds the fees requested by AAMCO ($41,410.08) problematic under the *Johnson* factors. For example, as to time and labor expended, the Cheng Cohen attorneys claim to have spent

a total of 65.8 hours on motions practice. ECF No. 27-1 ¶ 5. AAMCO filed a total of six motions in this case: two motions for Cheng Cohen attorneys to appear *pro hac vice*, a motion for the Clerk's entry of default, a motion for an extension of time, a motion for default judgment, and the present motion for attorney's fees. Each of these essentially routine motions and the memoranda in support (where applicable) totals less than 15 pages, as does the complaint. Thus, even if the rates sought by AAMCO's attorneys are presumptively reasonable because they fall within the guidelines of Appendix B, the amount of time spent by the Cheng Cohen attorneys on motions practice seems overstated.[3] The same holds true with respect to the number of Cheng Cohen attorneys and support staff who worked on the matter—two partners, one senior associate, one mid-level associate, and two paralegals. ECF No. 27-1 ¶¶ 7-9. On the other hand, the Plave Koch attorneys claim to have billed .9 hours on motions practice between two partners, for a total of $467.50, which appears reasonable.

As to the novelty and difficulty of the questions raised and the skill required to properly perform the services required, AAMCO does not identify this case as particularly novel or difficult, and indeed it appears to be largely of the garden variety. The Court recognizes that pressing claims against a disengaged defendant may present challenges, such as effectuating proper service, identifying the extent of infringement, and calculating an appropriate request for damages. *See Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 584 (M.D.N.C. 2009) (describing the approach used by courts to approximate damages in Lanham Act cases because they are otherwise "difficult to measure"). But the ultimate measure is whether such challenges are "extraordinary."

---

[3] AAMCO states that it is not seeking fees for the time spent preparing the instant Motion. ECF No. 27-1 ¶ 11.

In other Lanham Act cases following entry of a default judgment, courts have generally awarded fees that are lower than the sums requested here. For example, in *Hilton Worldwide*, the court granted the plaintiff's request for a permanent injunction and awarded attorney's fees in the amount of $9,407.37 for 18.7 hours of work by two attorneys. 2016 U.S. Dist. LEXIS 189528, at *26. Apart from that, the Court takes note of the fact that the fees sought here ($41,410.08) are nearly half the damages awarded after trebling ($91,230.30).

As to the remaining *Johnson* factors, the Court accepts AAMCO's representations that the Cheng Cohen attorneys and support staff customarily charge at rates higher than they propose here for like work, and that the Cheng Cohen attorneys assigned to the case have extensive experience in trademark infringement matters (some having worked on trademark cases for decades). ECF No. 27-1 ¶¶ 7-10.

Still, given the Court's concerns expressed *supra*, the Court finds that a reduced award, totaling $25,000, would be reasonable under the circumstances. The Court reaches this conclusion after averaging the guidelines rates corresponding to the efforts of all the attorneys who appeared on behalf of AAMCO. Aaron-Michael Sapp, a partner at Cheng Cohen, has practiced for more than 10 years, many of which have been focused on franchise and distribution disputes. ECF No. 27-1 ¶ 7. He has discounted his rate to $350 per hour to fall within the Court's guidelines. *See id.* Stephen C. Jarvis, an associate at Cheng Cohen, has more than 10 years of experience, most of which has been concentrated on trademark law. *Id.* ¶ 8. He has also discounted his ordinary rate to $350 to fall within the guidelines. *Id.* Leslie Diane Johnson Pujo, a partner at Plave Koch, has more than 15 years of experience in the franchise and trademark fields. ECF No. 27-8 ¶¶ 7, 8. Her hourly rate for this matter was $425. *Id.* ¶ 3. But averaging all attorney rates in this case still results in an overall hourly rate of $375. The Court is satisfied that this rate is reasonable.

The Court also finds 67 hours to be a reasonable amount of time to have spent prosecuting this case. This fairly reflects the hours spent researching the issues presented, drafting pleadings and motions, seeking admission *pro hac vice*, and otherwise strategizing and administering a case with two defendants who failed to litigate. A rate of $375 for 67 hours results in a total award of $25,125, which the Court reduces to $25,000 for ease of administration.[4]

The Court does not subtract fees for time spent on unsuccessful claims because AAMCO was successful on all counts. Nor is there any need to consider the award insofar as it might compensate for AAMCO's degree of success, *see McAfee*, 738 F.3d at 88, which goes without saying in a default-judgment case.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff AAMCO Transmissions, LLC's Motion for Attorney's Fees (ECF No. 25). Defendants Up to Parr, LLC and Carlos Parr are **ORDERED** to pay, jointly and severally, attorney's fees in the amount of $25,000 to Plaintiff.

A separate Order will **ISSUE**.

August 24, 2023

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[4] The Court declines to award the requested $1,076.72 for computerized research costs, $646.81 for service of process, and $1,879.05 for private investigator fees. The current award of $25,000 fairly covers research and service costs in a default-judgment case. In particular, courts in the Fourth Circuit look skeptically at requests for private investigator fees. *See, e.g., Jackson v. Estelle Place, LLC*, No. 1:08-cv-984 (LMB/TRJ), 2009 U.S. Dist. LEXIS 39837, at *3 n.1 (E.D. Va. May 8, 2009); *Associated Gen. Contractors of Am. v. Stokes*, No. 1:11-cv-795 (GBL/TRJ), 2012 U.S. Dist. LEXIS 186972, at *33 (E.D. Va. Nov. 20, 2012).